## WOODMAN v. LYDIARD-PETERSON CO.

(Circuit Court, D. Minnesota, Fourth Division. January 17, 1912.)

1. COPYRIGHTS (§ 29*)—SUFFICIENCY OF NOTICE.

A copyrighted publication, designated on the title page as "Woodman's Minnetonka Map-Directory," which consists of a map, and also a directory with the name of the publisher printed on the map, and also the words "Copyright 1908," contains a sufficient notice to protect the copyright of the map.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 29, 30; Dec. Dig. § 29.*]

2. COPYRIGHTS (§ 12*)—VALIDITY—MAP.

A map is subject to copyright, although the material was obtained from prior publications not copyrighted, if it constitutes a new arrangement of such old material and also contains new and original features.

[Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 12.*

Matter subject to copyright, see note to Cleland v. Thayer, 58 C. C. A. 273.]

3. COPYRIGHTS (§ 64*)—INFRINGEMENT—MAP.

Where every part of a map is copied from a copyrighted map, infringement is not avoided because certain features of the copyrighted map are omitted therefrom.

[Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 64.*]

4. COPYRIGHTS (§ 87*)—SUIT FOR INFRINGEMENT—DAMAGES—CONSTRUCTION OF STATUTE.

Copyright Act March 4, 1909, c. 320, § 25, 35 Stat. 1081 (U. S. Comp. St. Supp. 1909, p. 1297), which provides that in a suit for infringement the complainant may recover actual damages and profits, or in lieu thereof such damages as to the court shall appear to be just, and that such damages shall not exceed the sum of $5,000, nor be less than the sum of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

$250, does not compel the court to award damages to the amount of $250, if in its opinion the actual damages do not amount to so much.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 81; Dec. Dig. § 87.*]

5. COPYRIGHTS (§ 87*)—SUIT FOR INFRINGEMENT—DAMAGES.

That defendant gave away a certain number of copies of a map which infringed complainant's copyright does not create any presumption that complainant was thereby deprived of the same number of sales and entitle him to damages on that basis.

[Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 87.*]

In Equity. Suit by Prentiss M. Woodman against Lydiard-Peterson Company. The evidence was taken orally in court at the final hearing. At the conclusion of the trial the court delivered its opinion ordering a decree for complainant.

Charles J. Traxler, for complainant.

Milton D. Purdy, for defendant.

WILLARD, District Judge. While it is not admitted in the answer that the defendant copied the map of the complainant, yet the evidence in the case shows that that was done, and I understand that no contention to the contrary is now made by counsel for defendant. So we start with the fact found that, the complainant having a copyrighted map or publication, the defendant has made copies of it and used them. The question is whether, under these circumstances, the bill can be maintained.

[1] There is first the preliminary question raised by the defendant to the effect that no notice was given of the copyright, as required by law. The thing copyrighted was Woodman's Minnetonka Map-Directory, and the thing copyrighted is described in a letter from the librarian of Congress acknowledging the receipt of the title page.

That the book contains a proper notice of the copyright is admitted; but the question is whether the map is covered by the copyright notice found in the book. It is to be noticed, in the first place, that the title of this publication is "Map-Directory." It is not a directory alone; it is a map-directory, indicating that the map is included in the directory and made a part of it. When the table of contents is examined, we find on the first line in that table the words "Lake Minnetonka Map ......Inside front cover." The map is in a pocket in the first page of the book.

It has been held repeatedly that the copyright of a magazine copyrights every article in the magazine, that it is not necessary that the copyright notice should be repeated upon each article, but that one notice in the beginning of the magazine protects all the contents of the magazine. If it were necessary, I should be inclined to hold that this copyright notice in the book itself protects the map. But I am of the opinion that the notice on the map itself is sufficient. It contains the words, "Copyright 1908." To be sure, it does not say, by P. M. Woodman, nor does it say, copyrighted by Woodman; but nobody can have any doubt upon reading this language but that Woodman was the man who procured the copyright.

In the case of Osgood v. A. S. Aloe Instrument Co. (C. C.) 83 Fed. 470, there was no name whatever either after or before the word "Copyright." Here we do have "Woodman's Minnetonka Map-Directory." In that case there was no statement by whom it was published, as there is in this case. We also have the statement on the map that it was published by the Woodman Publishing Company, and we have on the title page the words "Woodman's Minnetonka Map-Directory." I do not see any reason for a very strict construction of the law. My recollection is that the strictness required by the former act has been materially modified by the present one. The object is to notify persons who is the owner of the publication, and the person by whom it is copyrighted, so that, if they make copies, they may know that they are infringing upon somebody's copyright. While it is probably material that some name be stated, yet I do not think that it is essential that the initials of the person copyrighting should be given. I therefore pass that contention by, holding that there was sufficient notice given of the copyright as required by law.

[2] The other serious question is whether the defendant has taken any substantial part of the map of the complainant. That everything that there is in the map of the defendant is taken from the map of the complainant is admitted; but it is suggested that some things which were in the map of the complainant do not appear upon the map of the defendant. It is also suggested that there is nothing original in the map of the complainant; that he himself secured all his material, not from original research, but from other publications. The fact that he did secure all this material from other publications which were not copyrighted does not, to my mind, prevent him from getting a copyright upon this map, if it constitutes a new arrangement of old material; and that this map does constitute a new arrangement of old material I think is apparent. It contains some parts of Carver county; it contains more than had appeared upon any one piece of paper or map of that character; it is a combination of the government and other maps. It is not true to say that it does not contain any original feature that had not appeared in any map prior to this time. It does contain quarter section lines. These, to be sure, are to some extent the same as those which had appeared in the Dahl Map; but that was accidental. They appeared in the Dahl Map because the boundaries of farms and tracts of land happened to coincide with the boundaries of the quarter sections. But an examination of the Dahl Map shows that, whenever the boundaries did not coincide with the quarter section line, then the quarter section lines were omitted. This is an original feature which the defendant availed himself of when he copied the map.

The complainant in his testimony specified some 38 features which he says were original in his map and did not appear in any other map unless it was in the government map. It was suggested by counsel, as I understood him, that the complainant had a right to copyright features which appeared upon the government map and did not appear upon any other map. I do not understand upon what basis that contention was made. I find nothing in the law to sustain it. On the

contrary, it appears from section 7 of the Act of March 4, 1909, that there is an express provision that no copyright shall be obtained of any government publication. Therefore, eliminating from the 38 items specified by the complainant all those which had formerly appeared on the government map, there still remain quite a number of original features, which, so far as the evidence shows, did not appear upon any other map. I think it specially appears that a part of a road near Holdridge did not appear upon the government map. The complainant also specified a lake in the southeast quarter of section 29, and said that the road across it was new. An examination of the government map shows that to be the fact. While the government map does show two lakes, it shows no road across the narrowest point between them. Again, in section 1, town 116, the complainant testified that there was a road marked by a dotted line, which did not appear upon any other map. No evidence is produced to contradict that. So, in the northeast corner of the northwest quarter of section 35, town 117, there is a road on the section line; and I might go through the different specifications that complainant made and point out several more instances which were not contradicted by evidence of the defendant. So I say that it is not true that there are no features at all in this map which are original with the complainant. These features are protected by the copyright.

The defendant itself had a right to take from the same sources that the complainant sought. It had a right itself to make a map which would be identical with the complainant's map and not infringe the copyright, but it did not see fit to do that. Instead of expending its own time and labor for that purpose and making a map which would be identical with complainant's map, and thus protecting itself, it made an exact copy of the complainant's map, and thereby saved itself the expenditure of time and labor which the complainant was compelled to expend himself in order to make his map.

[3] I think that there has been a case made out of copyright matter in this map, not only in the arrangement, but also in the matter of original material, and that the defendant, having copied the map, has infringed this right. The fact that it left off the houses and the numbers cannot, in my judgment, protect it. We might as well say that, if it had copied only half the houses and left off the other half, it would be protected. When it copied the map without the houses, it copied the essential features of the arrangement and the new elements to which I have called attention.

This I think is a proper case for an injunction restraining the defendant from making, disposing of, distributing, or in any way using this map.

[4] The serious question is with regard to the damages. It is admitted that the defendant did not sell its maps. It made nothing at all out of them, and the complainant very properly waived all rights to an accounting in the matter of profits. The law allows a complainant in a case of this kind to recover damages. Prior to the act of 1909 he had to prove his damages. That act seems to have made some radical changes upon this subject. It provides (section 25):

"To pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement, as well as all the profits which the infringer shall have made from such infringement, and in proving profits the plaintiff shall be required to prove sales only and the defendant shall be required to prove every element of cost which he claims, or in lieu of actual damages and profits such damages as to the court shall appear to be just, and in assessing such damages the court may, in its discretion, allow the amounts as hereinafter stated, but in the case of a newspaper reproduction of a copyrighted photograph such damages shall not exceed the sum of two hundred dollars nor be less than the sum of fifty dollars and such damages shall in no other case exceed the sum of five thousand dollars nor be less than the sum of two hundred and fifty dollars, and shall not be regarded as a penalty."

The rest of the section is of no importance here except subdivision 2, which provides that:

"In the case of any work enumerated in section five of this act, except a painting, statue, or sculpture, one dollar for every infringing copy made or sold" may be allowed.

The anomalous provision in this section is this: That the court may in lieu of actual damages and profits in its discretion allow such damages as shall appear to be just; yet it apparently requires such damages in this case to be $250. But it cannot be possible that, where the court is of the opinion that there were no damages at all, it still is bound to allow $250, and that, where the court is of the opinion that it would be a matter of injustice to allow even $1, it would be compelled by law to allow $250. Some other construction must be given to that provision. I think it means that where the court is satisfied that there are substantial damages, but the evidence is incomplete or is insufficient, so that the court cannot determine just what the damages are, then it may allow them on that basis. But wherever the court is of the opinion that the damages cannot be more than $50 or $100, it should not allow $250.

[5] In this case the evidence shows that for the six months prior to the publication by defendant of its map the total proceeds received by the complainant were $50; what part of that was profit does not appear. An injunction being allowed, any further distribution of this map will be stopped, so that the damages to be considered can be only such damages as the complainant has suffered from the time of the publication by the defendant, which was March of this year, up to the present date, which is a period of about six months. I cannot see how these damages can amount to more than $50. It is suggested that, a thousand of these maps of the defendant having been distributed, the complainant has lost a thousand purchasers. That is on the assumption that, if the defendant had not given away a map to each one of these thousand men, the complainant would have gone to each of them and sold him a map for a dollar or 50 cents, and thereby made a profit.

But such a presumption is altogether too violent. There is no presumption that each of these men would have gone to the complainant and paid him a dollar or 50 cents for his map, and there is no showing that they would. There is no way of determining whether the complainant could have got into communication with these men so

as to have sold them one map. So I am inclined to disregard that feature of the statute which fixes the damages at $250 as a minimum, and I will allow the complainant $75 damages and an injunction.

A decree may be entered, therefore, for a permanent injunction as prayed for in the bill, for the sum of $75 damages, and the sum of $50 as an attorney's fee. A decree will also go for the complainant for his costs in the case. This disposition of the case will render unnecessary a reference, accounting, or any further proceeding before the master, or otherwise.