## PELLEGRINI v. ALLEGRINI et al.

(District Court, E. D. Pennsylvania. December 16, 1924.)

No. 3071.

**1. Copyrights ⬅75—Artistic merit of defendant's work, compared with plaintiff's copyrighted work, immaterial.**

In suit to enjoin infringement of copyright, artistic merit of defendant's work, as compared with copyrighted work of plaintiff, is immaterial.

**2. Copyrights ⬅36—Copyright holder has exclusive right to sell copyrighted work of art.**

Copyright holder has exclusive right to sell his copyrighted work of art.

**3. Copyrights ⬅4—Holder has no exclusive right to subject.**

Copyright holder has no exclusive right to a subject, such as a saint, a crucifix, or anything or any personality which might be made the subject of the artist's brush, or of the sculptor's chisel, or of the plastic art.

**4. Copyrights ⬅53—Test as to "infringement" of copyright stated.**

The test as to "infringement" of copyright is not the test of mere likeness, but the work claimed to constitute infringement must be a copy, more or less servile, of the copyrighted work, and not an original treatment of a subject, open alike to treatment by the copyright holder and others.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Infringement.]

**5. Copyrights ⬅53—Copyright of statuette held infringed.**

Plaintiff's copyright of a statuette of the figures of two saints standing on either side of a crucifix, with a glass cup receptacle for a candle positioned in front of the group, *held* infringed by similar statuette being produced and sold by defendant.

In Equity. Bill by Leon E. Pellegrini against Pietro Allegrini, Orlando Unti, and Tony Allegrini, trading as the Pennsylvania Statuary Company. On trial hearing on bill, answer, and proofs. Decree for plaintiff.

A. H. Carver and Blount & Helbert, all of Philadelphia, Pa., for plaintiff.

James A. Mahoney and Thomas J. Minnick, Jr., both of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. The motive underlying design patents and copyrights of works of art is one readily appreciated. The beautiful and the development of a love of the beautiful and of the artistic sense and taste is as much necessary to a well-rounded life as are the useful things. A like comment applies to our national life. It is well, therefore, to encourage the production of works of art. The policy is in line with, and in one sense an extension of, the policy avowed in our Constitution "to

promote the progress of science and useful arts." Article 1, § 8, cl. 8. These policies, if not the same, are very much alike. When, however, it comes to devising practical measures to carry these policies into effect, difficulties arise. The patent laws deal, if not exactly with inventive merit, with the fact of the presence of invention.

It is difficult enough at times to determine whether invention is present in any "composition of matter," as the patent law phrase has it. The difficulties are immeasurably increased when we come to pronounce, not upon the artistic merits of a work of art, but upon the presence of that in it, the artist's property in which it was the purpose of the "design" patent law and the copyright law to protect. The "design" patent law gives the right to a patent to any one who has produced or, as phrased in the Act of Congress, "invented" any "ornamental design for an article of manufacture." The copyright law confers the "exclusive right" to "vend the copyrighted work." The different "works" in which the copyright is claimed are classified in the Act of Congress. Among the "works" enumerated are the following:

"(g) Works of art; models or designs for works of art; (h) reproductions of a work of art." Comp. St. § 9521.

This is a copyright case. The plaintiff designed a statuette of the figures of two saints standing on either side of a crucifix, with a glass cup receptacle for a candle positioned in front of the group. The statuette is one which would especially appeal to purchasers of the religious persuasion in whose calendar of saints appear the names of St. Rita and St. Theresa.

The defendant likewise produced and put on sale a statuette which, for the present, we will characterize as of the same general description as that copyrighted by the plaintiff. The defendant has likewise copyrighted his "work." On the faces of the copyrights each has the "exclusive right" to sell his "work of art." No conflict is presented until the fact appears or is put in issue that the two are one and the same.

[1] An analogue which may be helpful is that of the like situation presented in a patent case, when plaintiff and defendant each holds letters patent for the subject-matter of the suit. Such a case (assuming the validity of the prior patent) reduces itself to two inquiries. One is into the priority in date and right and the other whether, if the plaintiff has such priority, what he has patented is what the defendant has "made, used or vended." If this analogue be a true one and holds good, then this cause comes down to like inquiries, and, inasmuch as the priority of plaintiff's copyright is not in dispute, really to the one question of whether the defendant's "work of art" is that which the plaintiff has the exclusive right to "copy and vend." It is clear enough that a comparison is not to be made between the two "works of art," with a view to determine their relative artistic merit. Such a judgment would not be a judicial one. Even if rendered, it might not be of much value. "De gustibus non disputandum" is a truth now of ancient vintage, but none the less remains a truth.

Applied to the artistic features of any work of art, the explanation is that there is no standard of artistic taste. Moreover, the question of artistic merit or value does not touch the right of property protected by a copyright. The copyrighted "work" may have a high order of such merit, or none at all, and the infringing "work" display none, or possess it in a superlative degree. The degree of such merit plays no part either in the right to a copyright or in any cause of action growing out of its infringement. The French phrase, with that genius for clarity which the French language possesses, more nearly expresses the thought. It is not necessarily a "work of art," something displaying artistic merit, but it is "objet d'art"—something upon which the labors of an artist as such have been employed. What, then, is it which the copyright holder has, in which he has a right of property, and which no one without his consent has the right to "copy"?

Another analogue may be here helpful. It is that of a trade-mark and the infringement of the trade-mark right in furtherance of unfair competition. Every manufacturer, whose product has become known to the trade as his, has a right to the benefits of the reputation which such product has acquired. If he has designated or "marked" the product in such a way as that by that mark his product has become known to the trade, he has acquired the right to such mark as a trade-mark, and no one with impunity may, by imitating such mark, impose another product of other manufacturers upon purchasers as the product of the trade-mark owner. The work of art copyright holder has a right very much like that of the trade-mark owner. The analogue is by no means complete, because the rights, although somewhat alike, are likewise dissimilar, but it is helpful because of these

differences. The trade-mark owner has the right to protection only against the goods of another being palmed off upon customers as his goods. He has no right to complain, although the goods have been made in the same way, of like material and of the same quality and style, provided only there is no deceptive similitude in markings, description, or appearance, which confuses their origin and misleads purchasers into mistaking one make of goods for the other.

[2-4] Another analogue which has been already suggested may be of some aid. It is very nearly akin to that of a trade-mark. Indeed, the difference is barely more, somewhat more, and yet barely more, than the difference between the presence or absence of a trade-mark. The analogue is that of unfair competition. The complainant may manufacture or deal in a commodity which has certain characteristics or qualities, physical or of form and style, which give it commercial value. The competitor (in the absence, of course, of any patent or other special property right) may deal in what is to all intents and purposes the identical thing in which the first dealer deals, provided only he does not so conduct his business as that what he sells may be mistaken by purchasers for the product of another dealer. The test here is very much the same as the test in trade-mark cases. It is the "palming off" test. If the copyright holder were not granted a greater right than this, he would be given none at all. He has, it is true, no exclusive right to the thing, but he does have to what may be called the form of the thing. Herein consists the analogy to these other rights, and the difference between them and the copyright right. A patentee has the right to the thing patented, or to the design patented. It is the exclusive right to make, use, and vend a thing. The trade-mark owner, or the manufacturer whose make of anything has become known in trade circles as his make, has the sole right to sell his product as his. The copyright holder has the exclusive right to sell his copyrighted work of art. This means the right, not to a thing, but to the form of a thing. This is really not a material thing, but barely more than a concept. It is something which appeals to the artistic sense; something which gives rise to a perception of artistic merit in the object.

The difficulty is in the test of whether a work of art is what another has copyrighted. It certainly is not necessary that it be what is commonly called a Chinese copy.

He just as surely has no exclusive right to the subject, be it a saint, a crucifix, or anything or any personality which might be made the subject of the artist's brush, or of the sculptor's chisel, or of the plastic art. The test is not mere likeness, because, if the subject be the same and the skill of the artists equal, there may well be a greater or less likeness in the "works" of any two or more of them. Indeed, when two artists take up, as for illustration, the painting of a portrait of the same subject from life, or of the same landscape at the same time of the year, the wonder commonly excited is not at the resemblance, but over the unlikeness. We have thus, by a process somewhat like that of elimination, reached the conclusion that the test must rest in the finding that the second "work" is not an original treatment of a subject open alike to treatment by both, but is a copy more or less servile of the first. There may be a strong likeness in the two, and yet such a finding not be made; there may be any number of differences between the two, and yet the finding be unhesitatingly made.

[5] Applying this test, we make the finding in this case of infringement of plaintiff's copyright. The test applied, we think, is the one to be extracted from all the cases, those to which we have been referred being (among others) the following: Bleistein v. Donaldson, 188 U. S. 239, 23 S. Ct. 298, 47 L. Ed. 460; Cleland v. Thayer, 121 F. 71, 58 C. C. A. 272; Woodman v. Lydiard (C. C.) 192 F. 67; White v. Shapiro (D. C.) 227 F. 957; Chatauqua School v. National School (D. C.) 211 F. 214; Bracken v. Rosenthal (C. C.) 151 F. 136; King v. Fleischer (C. C. A.) 299 F. 533.

A formal decree in accordance herewith, and awarding costs to plaintiff, may be submitted.