## CONTEMPORARY ARTS, Inc. v. F. W. WOOLWORTH CO.

### Civ. No. 8771.

United States District Court
D. Massachusetts.

Aug. 11, 1950.

Cedric W. Porter and Dike, Calver & Porter, all of Boston, Mass., for plaintiff.

Clarence A. Barnes, Douglas Smerdon, Boston, Mass., for defendant.

McCARTHY, District Judge.

This is an action for infringement of copyright under the Copyright Laws of the United States, Title 17 U.S.C.A. § 1 et seq., brought by Contemporary Arts, Inc., a Massachusetts corporation, having a principal place of business at 31 Stanhope Street, Boston, Massachusetts, against the defendant F. W. Woolworth Company, a corporation of Pennsylvania, having numer-

ous retail stores throughout the United States and in the District of Massachusetts.

The copyrighted work is an original sculpture and work of art entitled "Cocker Spaniel in Show Position", designed in 1942 by Elizabeth Philbrick (now Mrs. Glenn G. Hall) of Dedham, Massachusetts, under the professional name of "Jan Allan", and on which Registration of Copyright was duly granted by the Register of Copyrights Class G Pub. No. 39960, with a publication date of March 26, 1942 (Plf's Exh. 3).

Miss Philbrick duly assigned her copyright to the plaintiff by an assignment dated June 15, 1943 (Plf's Exh. 4.).

Sculptured models embodying the plaintiff's copyrighted work, which the plaintiff sells commercially, are a red plaster model which sells at retail for $4 (Plf's Exh. 5), a red porcelain model selling at retail for $9 (Plf's Exh. 6) and a black and white porcelain model selling for $15 (Plf's Exh. 7).

The infringement charged is the sale of ceramic models of a cocker spaniel in show position by the defendant F. W. Woolworth Company in its retail stores. One of such ceramic models was bought at the Woolworth Store in New York City at Fifth Avenue and 39th Street by Fred Press, the plaintiff company's chief designer and production man, on May 5, 1949, for $1.19. The model itself is plaintiff's Exhibit 1 and the sales slip showing the purchase is plaintiff's Exhibit 2. A second such Woolworth model is marked defendant's Exhibit A.

It appeared at the trial that the defendant F. W. Woolworth Company bought 127 dozen of the alleged infringing ceramic models from the Sabin Manufacturing Company of McKeesport, Pennsylvania, which were delivered to the Woolworth Company in March, April and May, 1949. The Sabin Manufacturing Company, jobber and dealer in such articles, is a partnership (one of the partners being Sam Sabin).

The alleged infringing models were manufactured by the Lepere Pottery Company, of Zanesville, Ohio, which sold them to the Sabin Manufacturing Company. The Lepere Pottery Company is apparently a partnership owned and operated by Otto and Paul Herold.

It is the plaintiff's contention that the ceramic models sold by the Woolworth Company (Plf's Exh. 1 and Deft's Exh. A) were directly copied from one of the plaintiff's plaster models, such as Plaintiff's Exhibit 5, which the plaintiff has been selling on the open market through dealers, pet shops, gift shops and the like continuously since 1942.

All of the plaintiff's copyrighted models bear a copyright notice, the plaster models such as plaintiff's Exhibit 5 having a "C" in a circle impressed on the left hind foot and the name "Jan Allan", and the porcelain models (plaintiff's Exhibits 6 and 7) carrying the copyright notice on a small printed label attached to the model.

The business of the plaintiff Contemporary Arts, Inc. is the designing, manufacture and sale of small sculptured figurines and statuettes, principally dancing and national figures and objects, and dogs and other animals. The plaintiff designs, manufactures and sells some 250 different pieces of sculpture currently, all of which are originals designed by the plaintiff's own sculptors, and 100 of them are dog models. All of the plaintiff's designs are original and exclusive with plaintiff and all are copyrighted.

Its principal designers are Elizabeth Philbrick, whose professional name is "Jan Allan", Elizabeth Dyer and Fred Press. Miss Philbrick has designed most of their dog models, as well as the "Cocker Spaniel in Show Position", and the plaintiff's catalog (plaintiff's Exhibit 10) states "The Jan Allan dog collection is the most complete in this country". The "Cocker Spaniel in Show Position" as sculptured by Jan Allan is original and the copyright in it is valid. The sculpture of an animal is copyrightable subject matter under the copyright laws. 17 U.S.C.A. § 5. It is not the subject but the treatment thereof that is protected by the statute. Stephens v. Howells Sales Co., D.C., 16 F.2d 805.

In designing dog sculptures the plaintiff makes every effort to make the dog model

authentic, realistic and true to type. Prize-winning dogs, their anatomy, physical structure and features are carefully studied, dog experts and judges are consulted for criticism of the first soft clay model, and again on the completion of the final commercial models in both plaster and porcelain. Great care is similarly taken in the manufacturing process to have the models accurate, authentic and of the highest quality. The reason for this research and careful workmanship is that the bulk of the plaintiff's sales of its dog models is made to dog owners and dog fanciers, who demand authentic types.

The research, original design and careful workmanship of the plaintiff in creating and producing its sculptures necessarily requires that plaintiff's statuettes be sold at higher prices than similar statuettes in both plaster or porcelain made by competitors can command.

· The plaintiff makes and sells its designs in both plaster and porcelain. Some understanding of the steps involved in the manufacture of both plaster and · porcelain models is necessary for appraising the defendant's defense of non-infringement or non-copying of the plaintiff's copyrighted dog. In making plaster models, after the preliminary research as to the physical structure and features of prize-winning dogs, a soft clay or plasterlene model is first designed which, when it has received the approval of the dog experts, is then transferred into durable plaster. For this purpose a mold is first made from the soft clay model and in so doing the soft clay model is necessarily destroyed. The cavity in the mold is then filled with plaster and this plaster model becomes the master copy. In making this hard plaster model and master copy, the mold is chipped away and destroyed. The hard master mold is then used for making flexible rubber molds, used in commercial manufacture of the plaster models. After a plaster model is pulled out of its rubber mold, it is cleaned; the mold seams are smoothed off; the model is dried in a hot room, colored, and the dog's features carefully painted on by hand. The model is then glazed, i. e. coated with a fine powdered glass which is then baked at a high temperature which fuses the glass onto the model.

In producing a model in ceramic or porcelain, changes and additional steps in the manufacturing process are required. Ceramic is a generic term for describing articles made of clay, which are then fired or baked (such as earthenware, pottery and porcelain). The quality and temperature of the firing depends on the grade or kind of clay used. Starting with the same plaster master-copy used in making the plaster models, the plaster master-copy must be altered to fit the demands of ceramic. In ceramics a hard plaster mold which will not pull away or around an undercut is employed. Thus, the plaster master-copy has to be altered to make it possible to pull away the various sections of the hard mold. For this purpose all undercuttings are filled in or eliminated. The hard plaster model is then made (in sections) over the plaster master-model and the model is removed. From then on it is merely a question of pouring the ceramic clay into the hard plaster mold. The ceramic clay (which is different from the plaster used in making the plaster model) is caused to settle in the mold and a large part of the moisture in the clay is absorbed into the plaster. The sections of the mold are then removed; the model is covered with a filler of glaze (powdered glass) and placed in a kiln to bake at a very high temperature. The plaintiff's porcelain models are baked at 2300° F. Hand decoration is applied around the eyes, nose and muzzle of the dog in the form of fine particles of ground glass and the model is then fired a second time to fuse the decoration into the first glaze. Before firing, the ceramic clay dog is the same size as its plaster master model, the degree of shrinkage depending on the fineness of the clay used and the temperature used in firing the clay. In ceramics it is impossible to obtain the same detail as in plaster, because the glazing cannot be accurately controlled and while in molten condition will frequently run in an unpredictable manner. A large number of second, third and fourth quality pieces are obtained in making ceramic and particularly porcelain models.

■ I find from comparing plaintiff's plaster model (plaintiff's Exhibit 5) with the Woolworth ceramic model (plaintiff's Exhibit 1 and defendant's Exhibit A) that the Lepere Pottery Company has directly copied the plaintiff's plaster model (plaintiff's Exhibit 5) by using one of them as its own master model from which it made its own molds used in making its ceramic models sold by the Woolworth Company (plaintiff's Exhibit 1 and defendant's Exhibit A). The hair conformations and arrangements which appear on the plaintiff's copyrighted plaster model (plaintiff's Exhibit 5) appear in substantial identity on the Woolworth ceramic models (plaintiff's Exhibit 1 and defendant's Exhibit A); these are features which no two sculptors doing original and independent work could probably make identical through coincidence.

■ There are some differences between the plaintiff's plaster model (plaintiff's Exhibit 5) and the Woolworth ceramic model (plaintiff's Exhibit 1 and defendant's Exhibit A). But, of course, it is not necessary that a copy be a "Chinese copy" in order to find infringement. Pellegrini v. Allegrini, D.C., 2 F.2d 610; Fleischer Studios v. Ralph A. Freundlich, Inc., D.C., 5 F.Supp. 808, 18 C.J.S., Copyright and Literary Property, § 94, p. 215. The most striking difference is that, where the plaintiff's plaster model is substantially smooth-surfaced, particularly on the neck and back, the Lepere Pottery Company has scratched or cut irregular grooves into the surface of its model to indicate hairlines. If these grooves or incisions were filled in the respective dog models would be identical in appearance. The Woolworth ceramic dog is likewise smaller in size than plaintiff's plaster model (plaintiff's Exhibit 5), but this is due to its being cast in ceramic clay, which shrinks during firing. The plaintiff's porcelain models (plaintiff's Exhibits 6 and 7) are likewise even smaller than the Woolworth ceramic model (plaintiff's Exhibit 1 and defendant's Exhibit A), due to the finer quality of porcelain and the higher firing temperature used. Other slight differences appear where the undercuttings have been filled in, particularly at the neck, and the vertical line of the legs and feet have been straightened, again to eliminate undercuttings. But these changes to eliminate undercuttings are required to be done to prepare a plaster model for casting in ceramic clay, as pointed out above in which a hard mold is used, and the mold cannot be stretched or pulled around the undercuttings, as is possible with the flexible rubber molds used in making plaster models.

Since the Lepere Pottery Company has directly copied one of plaintiff's plaster models such as plaintiff's Exhibit 5, by using it as its own model, the changes caused by adding the hairline markings and filling in undercuttings to prepare its model for ceramic casting do not avoid infringement of plaintiff's copyright. It is still an infringement if it appears that the copyrighted work has been copied, although altered or paraphrased.

■ A comparison of plaintiff's plaster model (plaintiff's Exhibit 5) with the grey plaster model (defendant's Exhibit 7) produced by defendant's witness Harry Moyer is informative. This grey plaster model has the hairlines cut into it and the undercuttings have been filled in and eliminated, as in defendant's ceramic models (plaintiff's Exhibit 1 and defendant's Exhibit A) to permit casting in ceramic. But otherwise the grey plaster model is identical in measurement, in the three dimensions of length, width, and height, of head, body, legs and tail and in the hair conformations and arrangements, with plaintiff's plaster model (plaintiff's Exhibit 5). This was demonstrated by the sculptress Miss Philbrick when she applied a pair of calipers to the two models respectively, making repeated measurements and comparisons at a great number of points. Such identity in measurement, shape and hair conformation to the minutest detail hardly could be the result of coincidence and precludes the contention that the Lepere Pottery Company did original and independent work. The similarities being so striking, access may be inferred. Arnstein v. Porter, 2 Cir., 154 F.2d 464.

■ The court in a copyright case must determine whether or not the fact of infringement is proven, and the opinion of

experts, although helpful, may not be substituted for the court's judgment. Encyclopedia Britannica Co. v. American Newspaper Association, C.C.N.J., 130 F. 460; West Publishing Co. v. Edward Thompson Co., C.C.N.Y., 169 F. 833; Allegrini v. DeAngelis, D.C., 59 F.Supp. 248. "The existence of such infringement is dependent upon the question whether the ordinary reasonable person would fail to differentiate between the two works or would consider them dissimilar by reasonable observation. Hein v. Harris, C.C.N.Y., 175 F. 875." Allegrini v. DeAngelis, supra, 59 F.Supp. at page 251. The test is that of "the library rather than that of the dissecting room". (Eisman v. Samuel Goldwyn, Inc., D.C., 23 F.Supp. 519, 520); for that reason I am convinced that, while the defendant's expert dog-breeder and fancier may be able to distinguish between the dogs for technical reasons, the average reasonable observer would not. The question of artistic merit or value has no bearing upon the rights of the parties. Pellegrini v. Allegrini, supra.

The only defense to this evidence of direct copying of plaintiff's copyrighted plaster model by Lepere Pottery Company is the testimony of one Harry Moyer, employed by the Lepere Pottery Company, who stated that he himself created the identical design embodied in Miss Philbrick's copyrighted design in suit, in 1938, four years earlier than Miss Philbrick. He testified that the grey plaster model (defendant's Exhibit F) was "exact like" his own prior design; that the grey plaster model (defendant's Exhibit F) which is marked on the bottom "A.M. Co. 1938" is "an exact dog of the one which I made for Burley Pottery in 1938" from an English cocker spaniel which had been given to him; that he had found the grey plaster model in a cabinet at the Lepere Pottery Company in the early part of 1950; that it was in the cabinet of the Lepere Pottery Company when he went there in 1945; that his own cocker spaniel model, of which the grey plaster model (defendant's Exhibit F) is an exact likeness, was made and sold commercially by the Burley Pottery Company in 1938, when he was working for Burley, and again by Lepere Pottery since 1945; that he

had never asked nor was paid anything for this design, either by the Burley Pottery or Lepere Pottery. Moyer further admitted that he had no sculpturing experience, was not a dog expert, knew nothing about cocker spaniels, that his own dog was an English cocker spaniel, which was "very heavy coated", and which was never trimmed for showing purposes. But, as Miss Philbrick testified, her own copyrighted cocker spaniel was a composite or "ideal cocker spaniel", in which she sought to embody all the good points and features desired by cocker spaniel judges and experts in the American Cocker Spaniel in 1942. Her own cocker spaniel model is shown in show position and has been trimmed for showing. I find it difficult to believe that Moyer could have created by his own original independent work, and as a pure coincidence, an *English* cocker spaniel model, identical in its minutest details of hair configurations and dimensions (except for the added hairline carvings and filling in of undercuttings mentioned above with plaintiff's copyrighted model of the *"Ideal American* Cocker Spaniel of 1942", which had been trimmed for showing.

Moyer was entirely at a loss to account for or to explain the notation "A.M. Co. 1938" which appears on the grey plaster model (defendant's Exhibit F), and that fact is wholly without probative significance to indicate that the grey plaster model (defendant's Exhibit F) was made in 1938. It could readily be scratched on the model at any time by any one desiring to do so. Mr. Press showed how this could be done by scratching similar markings on his own plaster model (plaintiff's Exhibit 11) in the presence of the Court during trial.

The Moyer testimony further conflicts with the previous statements as to the origin of the infringing Woolworth model (plaintiff's Exhibit 1 and defendant's Exhibit A), which appear in the letter of Sabin Manufacturing Company to the Woolworth Company dated October 31, 1949 (plaintiff's Exhibit 15) which stated:

"In regard to your recent letter, I am sorry this was not answered sooner, but I have checked quite thoroughly into the matter. We have purchased these molds

from a pottery who has been making this dog since 1936.

"Please be advised that he states this was copied from a glass dog made in England. However, he is trying to find the original of this dog and up to the present writing, we have been unable to secure this sample. However, we would like to know when this copyright was put into effect."

No evidence was produced supporting the statements made in this letter. This earlier statement conflicts with Moyer's testimony produced at the trial.

The account given by the witness was uncorroborated. Viewing it as a whole, I am unable to give credence to his testimony.

 I find that the plaintiff's copyright has been infringed by the defendant's sale of ceramic models copied from the plaintiff's sculpture.

The plaintiff offered testimony that the sale of its plaster and porcelain models of its "Cocker Spaniel in Show Position", embodying the copyright in suit, and selling at $4, $9 and $15 respectively, was harmed by the sale of the "Woolworth dog" in the defendant's stores for $1.19. The plaintiff has had to design a new model of a cocker spaniel in show position, which has been done by Mr. Press, and which model is plaintiff's Exhibit 12, to replace Miss Philbrick's model. It is natural for dealers to think that the plaintiff is making and selling a cheaper reproduction of inferior quality through the Woolworth Company at a much lower price, and to refuse to do business with the plaintiff. It is difficult, if not impossible, for the plaintiff to prove its actual damages and defendant's profits, with the certainty required by the law for recovery of actual damages and profits.

The evidence shows that the defendant has bought 127 dozen or a total of 1524 of the infringing cocker spaniel ceramic models from the Lepere Pottery Company. The Copyright Act, Title 17 U.S.C.A. § 101, permits the Court "in lieu of actual damages and profits" to award "such damages as to the court shall appear to be just, and in assessing such damages the court may, in its discretion" allow a sum not exceeding $5,000, nor less than $250, which shall not be regarded as a penalty, at the rate of $10 in the case of a painting, statue, sculpture, for every infringing copy made or sold by or found in the possession of the infringer, his agents or employees. The number of 1,524 copies of the infringing cocker spaniel shown to have been sold by the Lepere Pottery Company to the defendant Woolworth Company is obviously more than the number required to justify the Court in awarding the maximum statutory damages of $5,000, at the rate of $10 per infringing copy.

Pursuant to § 101 of the Copyright Act, and "in lieu of actual damages and profits" the Court in its discretion awards the plaintiff statutory damages in the amount of $5,000, at the rate of $10 per infringing copy for the first 500 infringing copies.

In the light of the testimony at the trial I do not find it necessary to issue an injunction restraining the defendant from any further sales of this sculptured object.

Judgment may be entered for the plaintiff in conformity with this memorandum.